**UNITED STATES of America,
Plaintiff,**

**v.**

**Norma Louise FERGUSON, Defendant.**

**Crim. No. 42387.**

United States District Court
N. D. California.

Aug. 8, 1969.

---

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Gerard J. Glass, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION
## AND ORDER

GEORGE B. HARRIS, Chief Judge.

This matter is before the Court on defendant's motion to dismiss the information. Defendants Norma Louise Ferguson and John Edward Kangas were charged in one information with having, on November 14, 1968, burned a United States flag. Both defendants were attending a demonstration or rally on the front steps or "plaza" of this United States District Courthouse. During the course of the rally the defendants publicly burned a United States flag. Shortly thereafter F.B.I. agents took both into custody, and this prosecution followed.[1]

The instant motion is made upon the grounds that the defendant's act of

---

1. Defendant Kangas pleaded guilty and sentence was imposed on December 18, 1968, by the Honorable Lloyd H. Burke of this Court.

burning an American flag, if said flag was in fact burned, was an act of political protest falling within the free speech and expression guarantees of the first amendment of the United States Constitution; since the defendant's conduct is prohibited by the Statute, the Statute includes within its ambit constitutionally protected activity and therefore is unconstitutional.[2]

Defendant's argument is analogous to that made in the draft card burning case of United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In that case the Court held:

> We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when "speech" and "non-speech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms * * * we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. pp. 376–377, 88 S.Ct. p. 1679.

■ As in *O'Brien*, this court cannot accept the view that the actions charged can be labeled "speech" merely because defendant intends thereby to express an idea. However, even assuming the defendant's conduct was sufficient to bring into play the protection of the First Amendment, the court finds the statute valid under the test set forth in *O'Brien*.

Applying the test set forth in *O'Brien* the first consideration is whether the statute is within the constitutional power of the government. The United States Constitution, Article I, Section 8, sets forth the powers of the federal government. In addition to these powers the government has the power, set forth in the last paragraph of that section, "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

The government does not argue, nor can this court find, that this statute is authorized by any of the enumerated powers in Section 8.

---

**2.** Title 18 United States Code, Section 700, provides:

(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

(b) The term "flag of the United States" as used in this section, shall include any flag, standard, colors, ensign, or any picture or representation of either, or of any part or parts of either, made of any substance or represented on any substance, of any size evidently purporting to be either of said flag, standard, colors, or ensign of the United States of America, or a picture or a representation of either, upon which shall be shown the colors, the stars and the stripes, in any number of either thereof, or of any part or parts of either, by which the average person seeing the same without deliberation may believe the same to represent the flag, standards, colors, or ensign of the United States of America.

(c) Nothing in this section shall be construed as indicating an intent on the part of Congress to deprive any State, territory, possession, or the Commonwealth of Puerto Rico of jurisdiction over any offense over which it would have jurisdiction in the absence of this section.

It is clear from the necessary and proper clause, however, that the federal government has powers not enumerated in Article I, Section 8. Among these are the sovereign powers. These have been defined as "the natural and necessary concomitants of nationality." United States v. Curtis-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936). See also, Burnet v. Brooks, 288 U.S. 378, 53 S.Ct. 457, 77 L.Ed. 844 (1932).

Among these natural and necessary concomitants of nationality is the selection of a national symbol or flag. The importance of a flag in developing a sense of loyalty to a national entity is without question. Countries and movements òf whatever political persuasion adopt a banner in their incipient stages because of its psychological impact upon those who would serve in their behalf. Our own country was no exception to this fundamental rule. During the early efforts of the Continental Congress to forge a union, the Congress, less than one year after declaring its independence, provided on June 14, 1777, that "the flag of the United States be thirteen stripes, alternate red and white, that the Union be thirteen stars, white in a blue field, representing a new Constellation." 8 Journal of the Continental Congress 464. With changes only in the addition of stars to herald the admission of new States, the same pattern adopted more than 190 years ago remains the one official banner representing the entire United States of America.

The power to select a flag carries with it the power to do whatever is necessary and proper for carrying into effect this selection. Certainly this would include the power to protect it from contemptuous destruction.

The second requirement set forth in *O'Brien* requires that it further an important or substantial governmental interest. Such interest is present here, in the governmental interest in preserving the loyalty and patriotism represented by the flag. Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1905).

The third requirement of *O'Brien* is that the government interest be unrelated to the suppression of free expression. This requirement is also met. The law does not, and was not meant, to curtail speech. As noted by Mr. Justice Harlan in his concurring opinion in *O'Brien*, this is not a case in which the law has the practical effect of entirely preventing the speaker from reaching a significant audience with whom he could not otherwise lawfully communicate. This is not such a case, since defendant could have conveyed her message in many ways other than burning the flag.

Similarly, the fourth element of the *O'Brien* test is met. Here the restrictions on first amendment rights are minimal. As noted above, even if the burning of the flag was accepted as speech, prohibition of this act would deprive the speaker of no audience or of no other means of reaching her audience.

The Court finds, therefore, that the statute satisfies the standards set forth in United States v. O'Brien, supra, and accordingly

It is ordered that defendant's motion to dismiss be, and the same is hereby, denied.