**LONG ISLAND VIETNAM MORATORI-UM COMMITTEE, Nassau Council of Women Strike for Peace, Barbara Spadanuta, Mae Newburger, Rhoda Seidel, and Barbara Shack, Plaintiffs-Appellees,**

v.

**William CAHN, District Attorney, Nassau County, Defendant-Appellant.**

No. 328, Docket 35287.

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1970.

Decided Dec. 24, 1970.

See also, 2 Cir., 437 F.2d 351.

Burt Neuborne, New York Civil Liberties Union, New York City (David Orlin and Wade Hooker, New York City, on the brief), for appellees.

Steven M. Hochberg, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York and Samuel A. Hirshowitz, on the brief), for appellant.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

This is an appeal from a judgment of the Eastern District of New York, sitting as a three-judge court convened pursuant to 28 U.S.C. §§ 2281 and 2284 which declared § 136(a) of the General Business Law of New York constitutional as properly applied, but held that it did not apply to plaintiffs' emblem—a representation of the American flag on which is superimposed a symbol that resembles an inverted trident and is generally recognized as the traditional peace symbol.

Section 136(a) provides that it shall be a misdemeanor to display "any word, figure, mark, picture, design, drawing, or any advertisement" upon any "flag, standard, color, shield, or ensign of the United States of America." [1] The statute defines "flag," as used in this section to include

"any flag, standard, color, shield or ensign, or any picture or representation, of either thereof, made of any substance, or represented on any substance, and of any size, evidently purporting to be, either of, said flag, standard, color, shield or ensign, of the United States of America, or of the state of New York, or a picture or a representation of either thereof, upon which shall be shown the colors, the stars, and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation may believe the same to represent the flag, colors, standard, shield

[1] Section 136(a) provides in full:
§ 136. *Exhibition or display of the flag*
Any person who: a. In any manner, for exhibition or display, shall place or cause to be placed, any word, figure, mark, picture, design, drawing, or any advertisement, of any nature upon any flag, standard, color, shield or ensign of the United States of America, or the state of New York, or shall expose or cause to be exposed to public view any such flag, standard, color, shield or ensign, upon which after the first day of September, nineteen hundred and five, shall have been printed, painted or otherwise placed,

or to which shall be attached, appended, affixed or annexed, any word, figure, mark, picture, design, or drawing, or any advertisement of any nature
\* \* \* \* \*
Shall be guilty of a misdemeanor.
Other subsections of the statute are specifically directed at physical uses of the flag, as defined in the section, which tend to "cast contempt upon" the American flag. § 136(d) and (f). The statute also prohibits raffling or placing in pawn any such flag or representation thereof § 136(e), as well as public use of it as a receptacle for depositing or collecting money § 136(g).

or ensign of the United States of America or of the state of New York." We hold that § 136(a) is unconstitutional both on its face and as applied in this case.

On January 15, 1970, defendant William Cahn, the District Attorney of Nassau County, announced at a press conference that he would, on complaint of any person, prosecute under § 136(a) anyone displaying or distributing a representation of the American flag which has superimposed upon it any symbol, design, or word. He specifically mentioned as violative of the statute the emblem widely circulated by the plaintiff organizations and the individual plaintiffs in the form of a decal and a button. That emblem consists of a circular representation of the American flag, having seven stars in the upper left-hand corner and eleven stripes and colored red, white and blue, upon which the peace symbol is superimposed. (See Appendix.)

On January 19, plaintiffs obtained from Chief Judge Mishler of the Eastern District of New York an order directing D.A. Cahn to show cause why he should not be enjoined from carrying out his announced intention to prosecute those wearing plaintiffs' buttons and to show cause why a three-judge court should not be convened to determine plaintiffs' challenge to the constitutionality of § 136(a). The action was based on the Civil Rights Act, 42 U.S.C. § 1983. At this time Cahn promised that he would refrain from commencing prosecutions during the pendency of the federal proceedings. On January 27, Judge Bartels ordered the convocation of a three-judge court; that court consisted of Circuit Judge Moore, and District Judges Bartels and Travia.

On June 22, 1970, the district court issued its decision declaring § 136(a) constitutional as properly applied, but holding that it could not be applied to plaintiffs' emblem since that emblem did not constitute a flag. Judge Moore, writing for himself and Judge Bartels, stated

that plaintiffs' emblem did not come within the proscription of § 136(a) because "[i]t is the flag itself which the statute seeks to protect from physical alteration, and no attempt to alter an actual American flag is presented by the plaintiffs' buttons and decals." In reaching the decision, Judge Moore concluded that the New York Legislature in enacting § 136 could not possibly have intended that the statute should apply to the wearing or distribution of such emblems as those of the plaintiffs. Judge Travia, concurring in part and dissenting in part, agreed with the majority that the statute was constitutional, but believed that it clearly proscribed plaintiffs' emblem and that such a proscription was justified by the state's interest in protecting the integrity of the flag.

Since Cahn had pledged to respect the district court's decision pending appeal, that court issued no injunctive relief. Accordingly, Cahn appealed to us pursuant to the newly enunciated rule of Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970), in which the Supreme Court held that an order granting or denying only a declaratory judgment must be appealed to the Court of Appeals rather than to the Supreme Court. We affirm the district court's decision on the ground that § 136(a) is unconstitutional.

The first contention which appellant Cahn urges is that the district court should have abstained from deciding the case since it found § 136(a) susceptible of an interpretation which avoids the constitutional question. According to this argument, since the constitutional question can be avoided and hence the only question is one of statutory interpretation, the state courts—which have not yet interpreted § 136(a)—should have the first opportunity to interpret their own statute. In support of this contention, Cahn relies on Harrison v. N. A. A. C. P., 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959), in which the Supreme Court observed that

"no principle has found more consistent or clear expression than that the

federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them."

Cahn also argues that giving the state courts the first chance to interpret § 136(a) would cause no irreparable harm to the plaintiffs since he has promised to refrain from instituting prosecutions during the pendency of this case and would surely do the same if the district court applied the abstention doctrine and the plaintiffs promptly instituted an action in the state courts.

We reject these contentions as did all three judges below. The principle of abstention does not involve the abdication of federal jurisdiction, but only the postponement of its exercise. Harrison v. N. A. A. C. P., *supra*, at 177, 79 S.Ct. 1025. However, in cases involving a challenge that the statute is on its face unconstitutional, the delay of state court proceedings might itself cause an impermissible chilling of the very constitutional rights which the plaintiff seeks to protect. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 483–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1964). The Supreme Court has stated that "due respect" must be afforded a civil rights plaintiff's choice of forum for the vindication of his First Amendment rights, Zwickler v. Koota, *supra*, 389 U.S. at 247–248, 88 S.Ct. 391; and we stated in Holmes v. New York City Housing Authority, 398 F.2d 262, 266 (2d Cir. 1968), that "[w]here a district judge chooses to exercise his equitable discretion in favor of retaining [a civil rights action], it will be unusual indeed when an appellate court refuses to uphold his discretion."

In the circumstances of this case, abstention could cause irreparable harm to the plaintiffs and to others similarly situated and could thus effectively nullify First Amendment rights. This danger is particularly grave since state proceedings often take many months before they are finished. Moreover, we were advised at oral argument that others are now being arrested frequently for various types of violations of § 136(a) similar to those in the instant case or are being threatened with arrest for such violations. For example, counsel for the plaintiffs advised us at argument that they represent over sixty persons who have been charged with displaying the emblem in question here, and that these prosecutions and District Attorney Cahn's threat have deterred many people from joining plaintiff organizations. Although Cahn has promised to refrain from prosecutions during the pendency of this litigation, his promise hardly affects prosecutions in parts of the state other than Nassau County. As Judge Moore observed in his opinion for the district court, "our citizens are entitled not to be threatened with prosecution because of a particular interpretation given to a somewhat ambiguous statute by a prosecutor whose views on public issues may differ from others." In view of these circumstances, there is no good reason why the federal courts should abstain in this § 1983 civil rights suit until the state courts have resolved the questions. In the First Amendment area where many persons are constrained to withhold action until their rights are clarified, it is particularly desirable that judicial action be expeditious.

In any event, § 136(a) cannot reasonably be interpreted to be inapplicable to the emblem in question here and thus to avoid the constitutional question.

The district court found that § 136(a), while constitutional, does not apply to plaintiffs' emblem. We cannot agree with this finding. Despite Judge Moore's attempt to look at the purpose of the statute, the language of § 136(a) clearly includes emblems such as those displayed by plaintiffs, as well as many others. Section 136(a) makes criminal the display of any flag, standard, color, shield, or ensign upon which shall have

been placed any word, figure, mark, picture, design, or drawing; and the statute defines the words "flag, standard, color, shield or ensign" to include a picture or representation thereof upon which shall be shown the stars and stripes in any number or "by which the person, seeing the same, without deliberation may believe the same to represent" the American flag or colors.

In our opinion anyone looking at the plaintiffs' emblems, with their red, white, and blue stars and stripes, must conclude immediately that they are representations of the flag. Although the courts should try, whenever possible, to construe statutes to avoid a constitutional infirmity, they may not, in doing so, rewrite the statute or do violence to its plain language. Welsh v. United States, 398 U.S. 333, 344–345, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring). Judge Moore's interpretation of § 136(a) seems to us to be rewriting the plain language of the section. For this reason we must reach the constitutional question.

 Plaintiffs' first argument in this regard is that § 136(a) is unconstitutional on its face because it is overbroad and that it is overbroad because traditional First Amendment activity may be swept within its ambit. We agree. The Supreme Court has indicated on several occasions that if there is a reading of a penal statute which authorizes local law enforcement officers to prosecute traditional First Amendment activity, such a statute is unconstitutionally overbroad, despite the fact that the statute may also purport to proscribe activity not entitled to constitutional protection. E.g. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Baggett v. Bullitt, 377 U.S. 360, 371, 84

S.Ct. 1316, 12 L.Ed.2d 377 (1964); Keyishian v. Board of Regents, 385 U.S. 589, 609, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Section 136(a) falls in this category of overbroad statutes.

As plaintiffs argue, § 136(a) prohibits in clear language a myriad of uses of the flag, including not only the displaying of the emblems which plaintiffs have been distributing, but also the displaying of flags or flag-type buttons with patriotic slogans or pictures on them. It prohibits on its face all kinds of posters, buttons, symbols, slogans, and emblems such as have been used for many years in election campaigns, patriotic movements, and so forth.[2] Judge Moore recognized this problem when he wrote:

> The district attorney's broad reading of the subsection would make criminal the possession of all those reproductions of the face of President John F. Kennedy superimposed upon a picture of the American flag which hang on the walls of shops, homes and offices all over this country. And what of the millions of celluloid campaign buttons which for generations, including the time before this statute was enacted, have carried the photographs of the aspiring Presidential and other candidates against a background of one or more American flags in full color?

Thus the broad range of § 136(a) would prohibit the respectful and customary use of emblems employing the flag or resembling the flag, although the emblems are used to espouse ideas—a communicative activity which is protected by the First Amendment. In Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), the Supreme Court held that verbal communication involving the flag is protected by the First Amendment, even if that verbal communication "casts contempt upon" the flag. The question in the instant case is whether nonverbal or visual communica-

2. As the Appendix to plaintiffs-Appellees' brief demonstrates, the American flag has been traditionally utilized as a campaign poster, a military recruiting poster, and an eye-catching backdrop for the effective transmission of ideas.

tion involving the flag and flag alteration is similarly protected.

In Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the Supreme Court held that display of a political emblem—there a red flag as a sign of opposition to organized government—is communicative activity protected by the First Amendment. The Court reaffirmed that position last year in Tinker v. Des Moines, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), where it held that nonverbal display of political emblems—such as arm bands—was "akin to pure speech" and was entitled to the same degree of constitutional protection. The many types of flag usage and flag alteration mentioned above and prohibited by § 136(a) are a similar means of nonverbal political communication and hence come within the same rule. The use of the American flag throughout our history and in almost every political campaign as an aid in the dissemination of ideas demonstrates beyond any doubt the protected nature of such forms of expression.

Of course "symbolic speech" or visual communicative activity has been subjected to a greater degree of state control than has verbal communication. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); New York v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970), prob. jur. noted 400 U.S. 864, 91 S.Ct. 99, 27 L.Ed. 2d 102 (1970). The protection of such nonverbal communication is not absolute, but may be limited by a valid state interest. With respect to the flag uses described above, however, the state has no valid interest in prohibiting them. In Street v. New York, *supra*, Mr. Justice Harlan, writing for the Court, reviewed the state interests which a flag statute could conceivably serve. He listed

"(1) an interest in deterring appellant from vocally inciting others to commit unlawful acts; (2) an interest in preventing appellant from uttering words so inflammatory that they would provoke others to retaliate physically against him, thereby causing a breach of the peace; (3) an interest in protecting the sensibilities of passers-by who might be shocked by appellant's words about the American flag; and (4) an interest in assuring that appellant, regardless of the impact of his words upon others, showed proper respect for our national emblem." 394 U.S. at 591, 89 S.Ct. at 1365.

Section 136(a) was not meant to prohibit incitement of onlookers to unlawful acts, a purpose which did motivate the enactment of the flag mutilation and defilement provisions of subsections (d) and (f). See New York v. Radich, 26 N.Y.2d 114, 124, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970). Nor would subsection (a) withstand constitutional inquiry if construed as an attempt to proscribe expression having a tendency to provoke violent retaliation, for its proscription is not narrowly drawn to punish only that expression which would incite the average citizen to violent retaliation. See Street v. New York, *supra*, 394 U.S. at 592, 89 S.Ct. 1354. Mr. Justice Harlan gave short shrift to the third possible state interest—that of protecting the sensibilities of passers-by—when he stated:

"It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."

Street v. New York, *supra*, at 592, 89 S. Ct. at 1366. Finally, after careful analysis of West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (ruling that compulsory flag salutes violate freedom of speech and religion), Mr. Justice Harlan dismissed the state's interest in ensuring proper respect for the integrity of the flag. Such an interest, while wholesome on its face, has no place in a free society when, as in § 136(a), it in effect requires worship of the flag by compelling a series of taboos concerning flag display. Thus in the absence of any valid state interest in prohibiting

**350**

them, the many flag uses and flag alterations which § 136(a) proscribes are protected by the First Amendment and cannot constitutionally be forbidden. From this fact the overbreadth argument follows *a fortiori*.[3]

Similarly, § 136(a) is unconstitutional as applied to the particular flag alteration engaged in by the plaintiffs here. Like the respectful and "patriotic" flag uses discussed above, plaintiffs' flag usage is a means of expressing their views on a vital political issue and hence is protected communicative activity unless there is a valid state interest in proscribing their emblem. As shown above, the state has no such interest. Consequently, we conclude that § 136(a) violates the plaintiffs' First Amendment right to freedom of speech.

Plaintiffs also argue that § 136(a) is unconstitutional on its face because it fails to provide enforcement officials adequate guidance concerning what is proscribed. We agree. Because of its overbreadth, the statute vests local law enforcement officers with too much arbitrary discretion in determining whether or not a certain emblem is grounds for prosecution. It permits only that expression which local officials will tolerate; for example, it permits local officials to prosecute peace demonstrators but to allow "patriotic" organizations and political candidates to go unprosecuted. This opportunity for discriminatory selective enforcement, which § 136(a) provides, renders the statute unconstitutional. Cox v. Louisiana, 379 U.S. 536, 557, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

Finally, § 136(a) is unconstitutional because it fails to afford adequate notice to the public of the scope of its proscription and is thus void for vagueness. As plaintiffs colorfully state in their brief on appeal:

"Most persons react to Section 136(a) of New York's General Business Law in a manner similar to that of the Court below. They read the statute; painfully arrive at the plain, albeit convoluted, meaning of its words; and exclaim 'It can't possibly mean what it says.' They then attempt, as did the Court below, to arrive at some alternative meaning. Unfortunately, however, no two persons arrive at the same 'alternative meaning.' The net result is that no one knows what the statute means."

Absent knowledge of what the statute actually proscribes, a layman might refrain from conduct that is protected by the First Amendment for fear of coming too close to the line. Hence, the statute's failure to afford adequate notice of the scope of its proscription adds another constitutional infirmity. See Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

For these reasons, we affirm the judgment of the district court that the plaintiffs may not be criminally prosecuted for displaying their emblem, since we find that § 136(a) of New York's General Business Law is unconstitutional.

### APPENDIX

[A 2691] ©1969

---

3. Cf. Crosson v. Silver, 319 F.Supp. 1084 (D.Ariz.1970), in which a three-judge district court declared Arizona's flag desecration law unconstitutionally overbroad.