Charles Bruce PARKER and James
Robert Berg, Plaintiffs,

v.

Robert MORGAN, Jerry Whitley, John
Whitley and Robert M. Blackburn,
Defendants.

No. 2694.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Argued Nov. 6, 1970.

Decided Jan. 22, 1971.

Woodrow Wilson Jones, Chief District Judge, concurred and filed opinion.

George S. Daly, Jr., Joseph H. Tieger, Charlotte, N. C., for plaintiffs.

Robert Morgan, N. C. Atty. Gen., James F. Bullock, Deputy Atty. Gen., James L. Blackburn, and William Lewis Sauls, Staff Attys., Raleigh, N. C., for defendants.

Before CRAVEN, Circuit Judge, and JONES and McMILLAN, District Judges.

CRAVEN, Circuit Judge:

This is a suit brought to test the constitutionality of one of North Carolina's miscellaneous police regulations, codified as N.C.G.S. § 14–381, and entitled "Desecration of State and National flag". The statute is printed in the margin.[1] Enacted in 1917 during a period of national chauvinistic fervor, it is an uncommonly

---

1. Miscellaneous Police Regulations.

N.C.G.S. § 14–381. Desecration of State and National flag. Any person who in any manner, for exhibition or display, shall place or cause to be placed any word, figure, mark, picture, design, drawing, or any advertisement of any nature upon any flag, standard, color or ensign * * * upon which shall have been printed, painted or otherwise placed, or to which shall be attached, appended, affixed or annexed, any word, figure, mark, picture, design or drawing or any advertisement of any nature, or who shall expose to public view, manufacture, sell, expose for sale, give away, or have in possession for sale or to give away, or for use for any purpose, any article or substance of merchandise, or a receptacle of merchandise or article or thing for carrying or transporting merchandise, upon which shall have been printed, painted, attached or otherwise placed a representation of any such flag, standard, color or ensign, to advertise, call attention to, decorate, mark or distinguish the article or substance upon which it is so placed, or who shall publicly mutilate, deface, defile, or defy, trample upon or cast contempt, either by words or act, upon any such flag, standard, color or ensign, shall be deemed guilty of a misdemeanor and shall be punished by a fine not exceeding fifty dollars or by imprisonment for not more than thirty days. Any person violating this section shall also forfeit a penalty of fifty dollars for each offense to be recovered with costs in a civil action or suit in any court having jurisdiction. Such action or suit may be brought by and in the name of any citizen of this State, and such penalty, when collected, less the costs and expenses of the action or suit, shall be paid one half to the person suing and one half to the school fund of the county in which suit was brought; and two or more penalties may be sued for and recovered in the same action or suit.

The words, flag, standard, color or ensign, as used in this section, shall include any flag, standard, color, ensign, or any picture or representation of any of them, made of any substance or represented on any substance, and of any size, evidently purporting to be a flag, standard, color or ensign of the United States of America, or a picture or a representation of any of them, upon which shall be shown the colors, the stars and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation, may believe it to represent the flag, colors, standard or ensign of the United States of America.

The possession by any person other than a public officer, as such, of a flag, standard, color, ensign, article, substance, or thing, on which there is anything made unlawful by this section, shall be presumptive evidence that the same is in violation of this section.

bad statute. Despite our respect, and indeed love, for these symbols of state and nation, we are compelled to hold the statute unconstitutional.

I.

The factual context of the case is undisputed. On April 9, 1970, on the premises of the University of North Carolina at Charlotte, Parker wore a jacket on the back of which he had sewn an American flag, on which was superimposed the legend "Give peace a chance" and the depiction of a hand with index and middle finger forming a "V". Arrested by a campus security officer, he was thereafter charged with a violation of the statute and tried and convicted in the 26th Judicial District Court. Expressing the view that he was compelled by the terms of the statute to find Parker guilty, the district judge, nevertheless, commended him for displaying the flag in the cause of peace. Subsequently, on appeal to the Superior Court of North Carolina, Parker's motion to quash the warrant was allowed.

Plaintiff Berg's confrontation with the statute occurred under bizarre circumstances. For his own personal enjoyment and satisfaction, and, unlike Parker, apparently without any purpose to communicate an idea, Berg had affixed a United States flag to the ceiling of his automobile and in the course of doing so had torn it about the edges and pierced it with fasteners. Berg left his automobile on the edge of Interstate 85 and it was recovered by the police. When he claimed it, he was charged with a violation of the statute and brought to trial before another judge of the 26th Judicial District Court who granted his motion to quash the warrant.

II.

[redacted] Before proceeding to the merits we may quickly dispose of the state's procedural defenses. Clearly the plaintiffs have standing to prosecute the suit. The state through its two solicitors joined as parties defendant admits a duty to enforce the statute and the intention to do so. Obviously Parker and Berg may reasonably apprehend further arrest and prosecution. Indeed the evidence tends to show that Parker, because of his apprehension, has discontinued wearing his flag jacket. We think these plaintiffs have a sufficient personal stake in the outcome of this lawsuit, Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962), and that the dispute is a genuinely adversary one susceptible to judicial resolution, Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

[redacted] The state's contention that we should abstain to await authoritative interpretation of the statute by the state courts is without merit. It is now settled that the abstention doctrine is inappropriate for cases where "statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities," Dombroski v. Pfister, 380 U.S. 479, 489–90, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965). The state does not suggest any acceptable limiting construction of the statute that may readily be anticipated as the result of a single criminal prosecution, and indeed none occurs to us. *Dombroski,* 380 U.S. at 491–492, 85 S.Ct. 1116, 14 L.Ed.2d 22. It is clear that abstention is improper where there is no issue of state law that might be dispositive, or where it is clear that the state statute is unconstitutional no matter how it may be construed by the state courts. C. A. Wright, The Law of Federal Courts, § 52, at 207–08 (2d Ed. 1970).

III.

[redacted] We believe the flags of the United States of America and the State of North Carolina to be sui generis. In our opinion the Congress of the United States is constitutionally empowered to reasonably regulate display of the national emblem, and may constitutionally permit the states also to reasonably regulate such display. Doubtless Congress

could exercise exclusive dominion with respect to the national emblem, but it has chosen not to do so.[2]

We reject plaintiff's argument that because the national flag is a symbol it is always "saying" something, and because it says something control of its display and usage is outlawed by the freedom of speech clause of the First Amendment. The argument is based on a false premise: that what the flag stands for can be authoritatively stated, i. e., that it represents government and/or official policy. If the flag says anything at all, and we agree it often may in a given context, we think it says everything and is big enough to symbolize the variant viewpoints of a Dr. Spock and a General Westmoreland. With fine impartiality the flag may head up a peace parade and at the same time and place fly over a platoon of soldiers assigned to guard it.

The flag has never been a trademark of government. It is not "official" in the sense that its display is limited to the Army or the Navy or to public buildings or for state occasions. It no more belongs to the President than it does to the most private citizen. It may be flown, and often is, over the YMCA and the Jewish synagogue, the Peace Corps and the Army post, the American Federation of Labor and General Motors. It belongs as much to the defeated political party, presumably opposed to the government, as it does to the victorious one. Sometimes the flag represents government. Sometimes it may represent opposition to government. Always it represents America—in all its marvelous diversity.

■ ■ That the government in the name of all the people may reasonably regulate usage and display of the flag, qua flag, does not mean, we think, that the government may appropriate the colors red, white and blue and the depiction of stars and stripes. Thus we think for a flag control statute to be constitu-

tional it must precisely define a flag and carefully avoid expropriation of color and form other than the defined emblem itself, e. g., it seems to us that red, white and blue trousers with or without stars are trousers and not a flag and that it is beyond the state's competence to dictate color and design of clothing, even bad taste clothing.

■ The trouble with the North Carolina statute is that it attempts too much and goes much too far and infringes upon the reserved liberties of the people. We think it void both for vagueness and overbreadth.

The definition of a flag in the North Carolina statute is simply unbelievable. It would doubtless embrace display of the Star of David against a red, white and blue background. The statute makes plain that it matters not how many stripes or how many stars. One of each is enough. This is expropriation of color and design—not flag protection.[3] Size is of no consequence and substance of no importance. It is even possible that the stars could be omitted entirely and the colors alone infringe the statute, for there is a disjunctive clause leaving it to the subjective determination of any person to believe, without deliberation, that a substance or design may represent the flag of the United States. Read literally, it may be dangerous in North Carolina to possess anything red, white and blue. Such a definition is a manifest absurdity. Since it is not suggested that the state has the slightest interest in singling out from the spectrum certain colors for unique protection, this definition alone is sufficient to void the statute.

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. * * * '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence

---

2.  18 U.S.C. § 700(c).

3.  On the day this case was heard the Charlotte Observer carried a Belk Stores ad-vertisement in red, white and blue with stars. Needless to say, there has been no arrest and no prosecution.

must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'" Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L. Ed. 888.

But there are other flaws. Inserted about half way through the rubric beginning with the disjunctive "or" are these words:

or who shall publicly mutilate, deface, defile, or defy, trample upon or cast contempt, either by words or act, upon such flag, * * *

Previous clauses purport to forbid placing any word, figure, mark, picture, design or drawing upon a flag. It is impossible to tell in the context of this unintelligible statute whether it was the legislative intent to prohibit all marks, figures, etc., or simply those thought to deface, defile or cast contempt upon the flag. It is not clear, for example, whether the Great Seal of the United States might be superimposed on the flag if viewed as an embellishment rather than a defilement. It is difficult to conceive of any state interest in preventing such a design.

■ If the middle section is the heart of the statute, it is clearly unconstitutional. For the forbidden conduct includes casting contempt upon the flag by words and it is now settled that such state control is forbidden by the First Amendment. In Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1968), the Supreme Court considered the constitutionality of a statute virtually identical in language to the middle portion of the North Carolina statute. New York had made it a misdemeanor "publicly [to] mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act [any flag of the United States]." Upon hearing that civil rights leader James Meredith had been shot by a sniper in Mississippi, Street, himself a Negro, took his 48-star American flag, which he had formerly displayed on national holidays, to a public street corner and burned it. He was charged with having desecrated the flag by burning it and by contemporaneously stating "If they did that to Meredith, We don't need an American Flag." 394 U.S. 579, 89 S.Ct. 1359. On these facts, the Supreme Court expressly declined to decide whether a state can punish an action expressing contempt and held only that a state is forbidden to punish one who publicly defiles or casts contempt upon the flag *by words*.

■ The prosecutions of Parker and Berg were based on conduct. Words were not involved. But in the area of the First Amendment especially, we must consider the facial constitutionality of the statute not only in the factual context, but also in its broader implications. Thornhill v. Alabama, 310 U.S. 88, 96–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). See Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970). Parker and Berg and the class they represent may reasonably apprehend prosecution for conduct combined with words, for the statute so provides.

■ Aside from the "words" phrase of the statute which clearly invalidates it under *Street*, the North Carolina statute is overly broad with respect to prohibited conduct. Protection of the flag, qua flag, is one thing. To go further and forbid expression of attitudes by a gesture or even facial expression is quite another. It is beyond argument that the First Amendment protects the right of the people to protest against government. It would seem to follow that the people cannot be prevented from protesting against what may seem to some, whether rightly or wrongly, to be a symbol of government. The right of protest includes the right to be derisive, disdainful, contemptuous and even defiant of government and what may be thought to be in a given context its symbols of authority.

In West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the Supreme Court held that to require unwilling school children to salute the flag would violate rights of free expression assured by the Fourteenth Amendment. In his

opinion for the Court, Mr. Justice Jackson wrote these memorable words:

> The case is made difficult not because the principles of its decision are obscure but because the flag involved is our own. Nevertheless, we apply the limitations of the Constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization. * * * [F]reedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.
>
> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.

*Id.* at 641–642, 63 S.Ct. at 1187.

After quoting the foregoing language from *Barnette,* Mr. Justice Harlan, in *Street,* said this:

> We have no doubt that the constitutionally guaranteed "freedom to be intellectually * * * diverse or even contrary," and the "right to differ as to things that touch the heart of the existing order," encompass the freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous.

Street v. New York, 394 U.S. 576, 593, 89 S.Ct. 1354 (1969).

[redacted] We do not doubt the right of a citizen, however misguided, to turn thumbs down at the flag, or stick out his tongue, or salute it with a clenched fist, or otherwise express his derision and contempt for what to him it may represent.[4]

We think the line must be drawn at the point of contemptuous physical contact with the clearly defined flag and that physical protection of the flag itself is the outermost limit of the state's legitimate interest. It is absurd to say that one may verbally abuse the flag, but that he may not direct toward it a derisive gesture.

[redacted] Reading *Barnette* and *Street* together, we venture to derive these rules: No man can be punished for refusal to affirmatively demonstrate respect for the flag, nor can anyone be punished for speaking contemptuously of the flag, whether by word or gesture; but the legislature may constitutionally, whether wisely or foolishly, make it criminal to willfully and knowingly cast contempt upon the flag by public acts of physical contact such as mutilation, defiling, defacing or trampling.[5] "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).

In so concluding we adopt a middle ground and fail to follow *Street, supra,* to what the Second Circuit has considered to be its logical conclusion.

In Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2d Cir. 1970), the plaintiffs were threatened with prosecution under a New York statute virtually identical in language with the North Carolina statute we are now considering. Plain-

4. The Attorney General of Delaware, construing a statute almost identical with ours, advised the State Department of Public Instruction that it might invoke the statute to forbid students to render the so-called "clenched fist" or "black power" salute to the flag at athletic events. See Hodsdon v. Buckson, 310 F.Supp. 528 n. 8 (D.Del.1970).

5. See Loewy, Punishing Flag Desecrators: The Ultimate in Flag Desecration, 48 N.C.L.Rev. 48, 78 (1970).

tiffs had incurred the wrath of the District Attorney of Nassau County by distributing decals and lapel buttons on which appeared a circular representation of the American flag, having seven stars and eleven stripes and colored red, white and blue, upon which an inverted trident, generally recognized as the traditional peace symbol, had been superimposed. Although the decals and lapel buttons were not very much like a flag, the District Attorney was determined upon prosecution and had announced his intention at a press conference. A three-judge district court held the statute to be constitutional as properly applied, but also held that it could not be applied to plaintiffs' emblem since that emblem did not constitute a flag. Because no injunction issued, the appeal went to the Second Circuit under the rule of Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L. Ed.2d 378 (1970).

On appeal the decision of the three-judge district court was affirmed, but on a different rationale. The Second Circuit held the statute unconstitutional and expressed the viewpoint that it could not reasonably be interpreted to be inapplicable to the emblem in question.

> As plaintiffs argue, § 136(a) prohibits in clear language a myriad of uses of the flag, including not only the displaying of the emblems which plaintiffs have been distributing, but also the displaying of flags or flag-type buttons with patriotic slogans or pictures on them. It prohibits on its face all kinds of posters, buttons, symbols, slogans, and emblems such as have been used for many years in election campaigns, patriotic movements, and so forth. Judge Moore recognized this problem when he wrote:
>
> > The district attorney's broad reading of the subsection would make criminal the possession of all those reproductions of the face of President John F. Kennedy superimposed upon a picture of the American flag which hang on the walls of shops, homes and offices all over this country. And what of the millions of celluloid campaign buttons which for generations, including the time before this statute was enacted, have carried the photograph of the aspiring Presidential and other candidates against a background of one or more American flags in full color?

Long Island Vietnam Moratorium Committee v. Cahn, *supra* at 348.

The court concluded its opinion with these words which are equally applicable to the North Carolina statute before us:

> Plaintiffs also argue that § 136(a) is unconstitutional on its face because it fails to provide enforcement officials adequate guidance concerning what is proscribed. We agree. Because of its overbreadth, the statute vests local law enforcement officers with too much arbitrary discretion in determining whether or not a certain emblem is grounds for prosecution. It permits only that expression which local officials will tolerate; for example, it permits local officials to prosecute peace demonstrators but to allow "patriotic" organizations and political candidates to go unprosecuted. This is apparently the kind of toleration the defendant has practiced. This opportunity for discriminatory selective enforcement, which § 136(a) provides, renders the statute unconstitutional. Cox v. Louisiana, 379 U.S. 536, 557, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
>
> Finally, § 136(a) is unconstitutional because it fails to afford adequate notice to the public of the scope of its proscription and is thus void for vagueness. As plaintiffs colorfully state in their brief on appeal:
>
> > "Most persons react to Section 136 (a) of New York's General Business Law in a manner similar to that of the Court below. They read the statute; painfully arrive at the plain, albeit convoluted, meaning of its words; and exclaim 'It can't possibly mean what it says.' They then

attempt, as did the Court below, to arrive at some alternative meaning. Unfortunately, however, no two persons arrive at the same 'alternative meaning.' The net result is that no one knows what the statute means."

Absent knowledge of what the statute actually proscribes, a layman might refrain from conduct that is protected by the First Amendment for fear of coming too close to the line. Hence, the statute's failure to afford adequate notice of the scope of its proscription adds another constitutional infirmity. See Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

*Id.* at 350.

In Street v. New York, *supra,* Mr. Justice Harlan reviewed the state interest which a flag statute could conceivably serve, listing:

(1) an interest in deterring appellant from vocally inciting others to commit unlawful acts; (2) an interest in preventing appellant from uttering words so inflammatory that they would provoke others to retaliate physically against him, thereby causing a breach of the peace; (3) an interest in protecting the sensibilities of passers-by who might be shocked by appellant's words about the American flag; and (4) an interest in assuring that appellant, regardless of the impact of his words upon others, showed proper respect for our national emblem. 394 U.S. at 591, 89 S.Ct. at 1365.

Only the fourth state interest is of any pertinence on the facts of the case before us. In *Street, supra,* after careful analysis of West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), Mr. Justice Harlan dismissed the state's interest as being of insufficient weight when measured against the values of the First Amendment. But the Court specifically reserved the question of conduct divorced from words, even though the conduct was an act of protest. In Long Island Vietnam Moratorium Com-

mittee v. Cahn, *supra,* the Second Circuit answered the question reserved by the Supreme Court: "whether nonverbal or visual communication involving the flag and flag alteration is similarly protected [by the *Street* rationale]." *Id.* at 348. With respect to Mr. Justice Harlan's fourth possible state interest, that of insuring proper respect for the integrity of the flag, Chief Judge Lumbard had this to say:

Such an interest, while wholesome on its face, has no place in a free society when, as in (the New York statute) it in effect requires worship of the flag by compelling a series of taboos concerning flag display. Thus, in the absence of any valid state interest in prohibiting them, the many flag uses and flag alterations which (the New York statute) proscribes, are protected by the First Amendment and cannot constitutionally be forbidden.

*Id.* at 349.

If this means, as it appears to mean, that the First Amendment prevents even minimal state control of flag display and usage, we think it goes too far—albeit a logical extension of *Street, supra.* Worship is an affirmative concept. To protect the flag, qua flag, from physical defilement does not require dissidents to affirm the wisdom of such legislation or prevent expressions of scorn and derision toward all such legislative taboos. Narrow flag protection does not seem to us to infringe too much on First Amendment freedom where actual speech is not circumscribed.

We think the dismissal of the appeal in Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970), suggests the possibility the rule need not be all or nothing at all. There may be room between the Second Circuit on the one hand and the sweeping breadth of the statute on the other for an accommodation of competing interests.

Because the flag, qua flag, is not always in every context saying something, cf. Cowgill v. California, *supra,* we think the First Amendment is not infringed

by reasonable state regulation of usage and display of a carefully defined flag.

Having carefully examined this statute, and after giving due regard to the presumption of its validity, we conclude that there is no possible construction that could remedy its impermissible intrusion into areas of free expression protected by the First Amendment, and we hold it to be unconstitutional and void.

WOODROW WILSON JONES, Chief District Judge (concurring).

I concur in the court's judgment and in much of what is said in the prevailing opinion. I agree that Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L. Ed.2d 572, invalidates the provision of the North Carolina statute which makes it unlawful to defy or cast contempt *by words* upon the flag of the United States. I also agree that the section of the statute which defines the flag contains some provisions which are vague and perhaps overbroad, but I do not agree that those provisions are subject to the absurd interpretations feared by the majority. While the statute fails to provide enforcement officials with adequate guidance concerning what is proscribed, and fails to afford adequate notice to the public of the scope of its proscription, it nevertheless expressly provides that the object must evidently purport to be a flag of the United States.

I do not agree that the Constitution restricts the Congress or state legislatures to such narrow flag protection as indicated by the majority. It is true that the majority opinion does not go as far as the Second Circuit in Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2nd Cir. December 24, 1970), but the guidelines suggested by the majority go beyond what the Supreme Court has said thus far. I read West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628, and Street v. New York, *supra*, as holding only that no man can be punished for refusal to affirmatively demonstrate respect for the flag nor for speaking contemptuously of the flag by words.

I feel that some federal courts are reading too much into *Street*. It must be remembered that it was a five to four decision, and while the majority opinion contains a long discussion of First Amendment rights, the court decreed nothing more than a state cannot constitutionally inflict criminal punishment upon one who ventures "publicly to defy or cast contempt upon any American flag by words." The case was sent back to the New York courts to determine whether the defendant was convicted for his words or for his act of burning the flag. Among the dissenters were Chief Justice Warren and Justice Black, both of whom are ardent First Amendment defenders. Chief Justice Warren said: "I believe that the States and the Federal Government do have the power to protect the flag from acts of desecration and disgrace." Justice Black said: "It passes my belief that anything in the Federal Constitution bars a State from making the deliberate burning of the American flag an offense. It is immaterial to me that words are spoken in connection with the burning. It is the burning of the flag that the State has set its face against."

In my opinion, the Congress and the legislatures of the various states have considerable power to regulate the use and protection of the American flag. The Congress has prohibited the registration of any trademark which consists of or comprises the flag or any simulation thereof and has enacted several statutes prescribing how the flag may be displayed. 15 U.S.C.A. § 1052(b) and 36 U.S.C.A. §§ 170–179. In July of 1968 the Congress enacted a federal statute making it a federal crime to desecrate the flag of the United States. 18 U.S. C.A. § 700. This statute seems to meet the constitutional test and at least one federal court has so held. United States v. Ferguson, 302 F.Supp. 1111 (N.D. Calif.1969). In 1907, the Supreme Court in Halter v. Nebraska, 205 U.S. 34, 27 S. Ct. 419, 51 L.Ed. 696, in passing upon a

594

state statute similar to the one under attack here, held:

"Without further discussion, we hold that the provision against the use of representations of the flag for advertising articles of merchandise is not repugnant to the Constitution of the United States."

This decision has not been overruled.

Apparently, the last word from the Supreme Court on this subject came on January 10, 1970, when a motion to dismiss an appeal was granted in the case of Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590. Cowgill had been convicted by a state court of violating a statute making it a crime to publicly mutilate, deface, defile or trample upon the flag of the United States. The defendant's act of desecration was that of causing the United States flag to be cut and sewn into a vest, and then wore the vest on the public streets. The conviction was allowed to stand.

While under all of the circumstances presented here we must declare the statute unconstitutional, I do not agree that the power of Congress and the legislature of North Carolina is as restricted in this important field as the majority opinion seems to imply.