**William P. THOMS, on behalf of himself and all those similarly situated**

**v.**

**Allan SMITH, Assistant Prosecuting Attorney of the Fourteenth Circuit Court of the State of Connecticut, et al.**

**Civ. No. 14246.**

United States District Court, D. Connecticut.

Nov. 9, 1971.

J. Joseph Smith, Circuit Judge, concurred in the result and filed opinion.

Clarie, J., dissented and filed opinion.

John M. Fitzgerald, Corp. Counsel, Hartford, Conn., for Thomas Vaughan, Chief of Police.

Steven H. St. Clair, Connecticut Civil Liberties Union, Hartford, Conn., for

plaintiff; Joseph D. Harbaugh, Connecticut Civil Liberties Union, West Hartford, Conn., William R. Breetz, Jr., Cooperating Atty., Connecticut Civil Liberties Union, Hartford, Conn., of counsel.

John F. Shea, Jr., Thomas R. O'Marra, Manchester, Conn., for Chief Reardon and Chief Kjellquist.

Robert Y. Pelgrift, Corp. Counsel, West Hartford, Conn., for Chief Wm. P. Rush.

John F. Mulcahy, Jr., New Haven, Conn., for Richard P. Heffernan.

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge:

Plaintiff Thoms is opposed to what he deems to be "prevailing American values and/or governmental policies." He alleges a desire to express that opposition by publicly and peaceably defacing the American flag, or by displaying a distorted image of it. His desire is chilled, however, by Conn.Gen.Stats. § 53–255,[1] which makes "misuse of the flag" a criminal offense. By this class action, brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343, Thoms seeks a declaration that the statute is unconstitutional because vague and overly broad. Because he seeks as well an injunction against its enforcement by the defendants, a three-judge district court was convened, 28 U.S.C. §§ 2281, 2284.

## I.

### *Comity*

Defendants have invoked Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its companions[2] to support their contention that the instant case is one which a federal court should not entertain. Those cases dealt with the propriety of federal court intervention in pending state criminal prosecutions. The Court was expressly silent "about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun."[3] Younger v. Harris, *supra*, 401

---

1. The statute reads in full:

   "§ 53–255. Misuse of the flag.

   "Any person who, in any manner for exhibition or display, puts or causes to be placed any inscription, picture, design, device, symbol, name, advertisement, word, character, mark or notice upon any flag, standard, color or ensign of the United States or the state flag of this state or any ensign evidently purporting to be either of such flags, standards, colors or ensigns or in any manner appends, annexes or affixes to any such flag, standard, color or ensign, any inscription, picture, design, device, symbol, name, advertisement, word, mark, notice or token or displays or exhibits or causes to be placed or exhibited any flag, standard, color or ensign of the United States or the flag of this state or any flag, standard, color or ensign evidently purporting to be either of such flags, standards, colors or ensigns, upon which in any manner is put, attached, annexed or affixed any inscription, picture, design, device, symbol, name, advertisement, word, mark, notice or token or publicly misuses, mutilates, tramples upon or otherwise defaces or

   defiles or puts indignity upon any of such flags, standards, colors or ensigns, whether any of such flags, standards, colors or ensigns are public or private property, shall be fined not more than one hundred dollars or imprisoned not more than six months or both, for each offense. Flags, standards, colors or ensigns, the property of or used in the service of the United States or of this state, may have inscriptions, names of actions, words, marks or symbols which are placed thereupon pursuant to law or authorized regulations."

2. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) ; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971) ; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

3. Mr. Justice Brennan, in a separate opinion in Perez v. Ledesma, *supra*, 401 U.S. at 93, 91 S.Ct. 674, 27 L.Ed.2d 701, joined by Justices White and Marshall, indicated their view that the pendency of the prosecution, and thus the availability of a state forum, was central to the reasons for non-

U.S. at 41, 91 S.Ct. at 749. Because there is no prosecution pending against Thoms or the class he represents, *Younger* is inapplicable and imposes no bar to our consideration of the merits.[4] *See* Anderson v. Vaughn, 327 F.Supp. 101 (D.Conn. May 18, 1971).

## II.

### *Justiciability*

To satisfy the "case or controversy" requirement of Article III of the Constitution, plaintiff must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.

S. 103, 108, 89 S.Ct. 956, 960, 22 L.Ed. 2d 113 (1969).

Plaintiff brings this suit in the context of active enforcement of the criminal statute. Several recent arrests have been made and prosecutions initiated under the statute, by defendants or by other law enforcement officials and prosecutors. Moreover, plaintiff has informed these defendants of the particular "misuse of the flag" he wishes to employ to express himself,[5] and has attempted to solicit from them a prior indication of their prosecutorial stance with respect to that expression. Three of the defendants did not respond to plaintiff's letters; two indicated by phone their intent to enforce the stat-

---

intervention. He wrote, at 401 U.S. 103–104, 91 S.Ct. at 686:

"When * * * at the time of the federal hearing there is no state prosecution to which the federal court plaintiff may be relegated for the assertion of his constitutional defenses, the primary reason for refusing intervention is absent. * * * [C]onsiderations of federalism are not controlling when no state prosecution is pending * * *,"

and later, at 121, 91 S.Ct. at 695:

"When no state proceeding is pending and federal intervention is therefore appropriate, the federal court must decide which of the requested forms of relief should be granted."

(Footnote omitted).

4. Defendants make much of a prosecution under the challenged statute against one Van Camp. His conviction has been affirmed by the Appellate Division of the state Circuit Court and he has filed a petition for certification to the state Supreme Court. But Van Camp is neither the plaintiff nor a member of plaintiff's class. Plaintiff represents those with similar sentiments whose desire to express those sentiments in the manner described is chilled by threatened prosecution under the statute. The very fact of Van Camp's arrest and prosecution precludes him from being similarly situated. The prosecutions which the Court in *Younger* held sufficient to preclude federal intervention were those pending against the federal plaintiff himself. Indeed, an underlying basis for the Court's decision was that the federal plaintiff had a present state forum "affording [him] an opportunity to raise his consti-

tutional claims." 401 U.S. at 49, 91 S.Ct. at 753. *See also* Perez v. Ledesma, *supra*, 401 U.S. at 85, 91 S.Ct. at 677 ("Ledesma was free to present his federal constitutional claims * * * to the [state] courts * * * "). Mr. Justice Brennan, in his separate opinion in *Perez* made it abundantly clear that it was the present federal plaintiff who must have the available state forum provided by a pending prosecution. *See* footnote 3, *supra*. *See also* Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

The prosecution pending against Van Camp cannot provide an "existent, concrete opportunity to secure vindication of [Thoms'] constitutional claims." Perez v. Ledesma, *supra*, 401 U.S. at 121, 91 S.Ct. at 695 (opinion of Mr. Justice Brennan). It cannot, therefore, serve as a basis for invoking the doctrine of *Younger* and its companions.

5. Plaintiff stated in a letter to several of the defendants: "I own a vest which was recently fashioned for me from an authentic 3′ by 5′ American flag and I would like to be able to wear this vest to protest this country's intervention in the internal affairs of the Indochinese countries and the incredible brutality and violence that has been perpetrated upon the people of Indochina by the United States in the name of freedom and self-determination." Exh. 1 to the Complaint. Plaintiff's counsel stated at the hearing in this court that the vest was not the only misuse plaintiff wishes to make of the flag but only illustrative of the variety of ways he wishes to express himself in violation of the statute.

ute. Of the latter, one expressed doubt about whether plaintiff's proposed conduct would occasion his arrest under the statute; the other replied: " * * * go ahead and do it, and, * * * if you're in violation of the statute we'll lock you up."

██ Under these circumstances the controversy between the parties to this lawsuit is sufficiently real and immediate to be justiciable. Plaintiff and his class have a substantial and genuine interest in expressing their views by conduct which they are not unreasonable in assuming violates the statute.[6] Their desire for this particular kind of expression is chilled by the very real threat of arrest and prosecution by these defendants under the challenged statute.[7] Because the interest affected arises under the first amendment, we should be especially vigilant that it not go unprotected.[8] There being no prosecutions pending against plaintiff or his class, there is no other present judicial forum in which the threat to these basic interests may be tested. In a similar situation, this court recently commented:

" * * * we are of the view that the plaintiffs ought not be forced to violate a law affecting their First Amendment rights and subject themselves to criminal prosecution in order to place the issue before a judicial forum. Forced exposure to criminal sanctions in order to test the validity of statutory limitations of First Amendment

rights is irreparable injury of sufficient dimension to justify federal declaratory relief. See Perez v. Ledesma [401 U.S. 82, 120, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971) (separate opinion of Mr. Justice Brennan)]." Anderson v. Vaughn, supra, 327 F.Supp. at 103.

We adhere to that view. See also Parker v. Morgan, 322 F.Supp. 585, 587 (W.D. N.C.1971).

### III.

#### Constitutionality

It bears emphasis at the start that plaintiff mounts his attack upon the statute on its face, and not simply as it might hypothetically be applied to proscribe the wearing of his vest. With the case in that posture, and overbreadth claimed as the fatal defect, our inquiry is whether

"there is a reading of [the] statute which authorizes local law enforcement officers to prosecute traditional First Amendment activity * * * [even though] the statute may also purport to proscribe activity not entitled to constitutional protection." Long Island Vietnam Moratorium Comm. v. Cahn, 437 F.2d 344, 348 (2d Cir. 1970) (citations omitted) (hereafter Vietnam Moratorium).

As in Coates v. City of Cincinnati, 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214, 218–219 (1971),

6. Plaintiff submitted 37 affidavits from members of the class he represents. The affidavits do not set out any particular type of conduct in which the affiants propose to engage, but each affidavit does state that the affiant considers himself a member of plaintiff's class. It was reported by counsel at the hearing that the 37 represent a wide variety of desired modes of expression · all of which are deemed by the affiants to be in violation of the statute.

7. The statute at issue in this case, Conn. Gen.Stats. § 53–255, see footnote 1, supra, was repealed by the state legislature in its 1969 session. The repeal is to be effective October 1, 1971. Any mitigating effect that repeal might have had on the

controversy here, however, was removed when the legislature enacted Public Act 241 in the 1971 session. The new law, signed by the Governor on May 21, 1971, goes into effect on October 1 and is identical to § 53–255 except in its provision for harsher penalties for violation.

8. Although not every plaintiff "who alleges a First Amendment chilling effect and shivers in court has thereby established a case or controversy," National Student Ass'n v. Hershey, 134 U.S.App. D.C. 56, 412 F.2d 1103, 1114 (1969), it is also true that "suits alleging injury in the form of a chilling effect may be more readily justiciable than comparable suits not so affected with a First Amendment interest." Id. at 1113.

"[w]e need not lament that we do not have before us the details of the [plaintiff's] conduct * * *. It is the ordinance on its face that sets the standard of conduct and warns against transgression. The details of the offense could no more serve to validate this ordinance than could the details of an offense charged under an ordinance suspending unconditionally the right of assembly and free speech."

In judging whether Connecticut's flag misuse statute is susceptible to a reading which would proscribe constitutionally protected conduct, we are guided by the Court of Appeals' recent decision in *Vietnam Moratorium, supra,* 437 F.2d 344. The court in that case struck down as constitutionally overbroad on its face the very similar New York flag desecration statute. Sitting as a District Court, even as statutorily expanded to a panel of three for purposes of this case, we are unquestionably bound by the holding of that case insofar as pertinent to ours. Lewis v. Rockefeller, 431 F.2d 368, 371 (2d Cir. 1970).

■ We start with the proposition, expressed in *Vietnam Moratorium* as well as elsewhere, that "many types of flag usage and flag alteration * * * are a * * * means of nonverbal political communication," 437 F.2d at 349, and as such are forms of "symbolic speech" entitled to constitutional protection. The flag salute is a "form of utterance." West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). The communication of ideas or disagreements is not limited to spoken or written words. *See* Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). With the court in Crosson v. Silver, 319 F. Supp. 1084, 1086 (D.Ariz.1970), "we think it is self-evident that most, if not

all, conduct associated with the United States flag is symbolic speech."

"Sometimes the flag represents government. Sometimes it may represent opposition to government. Always it represents America—in all its marvelous diversity." Parker v. Morgan, *supra,* 322 F.Supp. at 588.

■ While symbolic speech does not enjoy the comprehensive first amendment protection provided for pure speech, *see Vietnam Moratorium, supra,* 437 F.2d at 349, its restriction is justified only by a valid state interest. *Id.; see* Tinker v. Des Moines Indep. Community School Dist., *supra,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731. In United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), the Court held that the validity of a regulation limiting symbolic speech depends upon whether:

"it is within the constitutional power of the Government; * * * it furthers an important or substantial governmental interest; * * * the governmental interest is unrelated to the suppression of free expression; and * * * the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

In Street v. New York, 394 U.S. 576, 591, 89 S.Ct. 1354, 1365, 22 L.Ed.2d 572 (1969), the Court listed the state interests "which might conceivably have been furthered by" a conviction under New York's flag defilement statute for *speech* which was contemptuous of the flag:

"(1) an interest in deterring appellant from vocally inciting others to commit unlawful acts;[9] (2) an interest in preventing appellant from uttering words so inflammatory that they would provoke others to retaliate physically against him, thereby caus-

---

9. The Court held that Street's conviction was not justified by this interest because first, his words were not incitive, and second, even if they were, the statute was

not so narrowly drawn as "to punish only those defiant or contemptuous words which amount to incitement * * *." 394 U.S. at 591, 89 S.Ct. at 1365.

ing a breach of the peace;[10] (3) an interest in protecting the sensibilities of passers-by who might be shocked by appellant's words about the American flag;[11] and (4) an interest in assuring that appellant, regardless of the impact of his words upon others, showed proper respect for our national emblem."[12]

While the interests at stake when symbolic speech is involved are not necessarily the same, *see* Crosson v. Silver, *supra*, 319 F.Supp. at 1087, the court in *Vietnam Moratorium* adopted the interests listed in *Street* as those relevant to the New York statute even as it purports to prohibit non-speech conduct toward the flag. It characterized the interests identified in *Street* as "the state interests which a flag statute could conceivably serve." 437 F.2d at 349. Accordingly, in applying *O'Brien* to test the constitutionality of the Connecticut flag statute insofar as it proscribes forms of symbolic speech, we confine our analysis of the interests involved to the four set out by Mr. Justice Harlan for the Court in *Street.*

In *Vietnam Moratorium,* the court held the New York statute unconstitutional because of its prohibition of flag uses which the state had no valid interest in prohibiting. *Cf.* Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907).[13] It concluded that the last two of the interests cited in *Street* were insufficient grounds for prohibiting flag use of the kind proscribed by the statute, and that the statute was not narrowly drawn so as to prohibit only those uses of the flag which would collide with the first two of the interests.

Connecticut's statute, like New York's, "prohibits in clear language a myriad of uses of the flag,"[14] *Vietnam Moratorium, supra,* 437 F.2d at 348, and of "any flag, standard, color or ensign" not the flag but which "evidently purports" to be the flag. It prohibits public misuse, without more. But not every public misuse of even the American flag will incite onlookers to commit unlawful acts or provoke others to retaliate and thereby cause a breach of the peace. And like New York's statute, Connecticut's is not narrowly drawn so as to regulate only

10. Neither did this interest justify Street's conviction because (1) "we cannot say that appellant's remarks were so inherently inflammatory as to come within that small class of 'fighting words' which are 'likely to provoke the average person to retaliation, and thereby cause a breach of the peace.' Chaplinsky v. New Hampshire, 315 U.S. 568, 574 [62 S.Ct. 766, 770, 86 L.Ed. 1031] (1942)," and (2) even if they were, the statute "is not narrowly drawn to punish only words of that character * * *." 394 U.S. at 592, 89 S.Ct. at 1365.

11. The Court held this interest to be of insufficient weight to support conviction because "[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." 394 U.S. at 592, 89 S.Ct. at 1366.

12. As to the state's interest in insuring respect for the flag, the Court said: "We have no doubt that the constitutionally guaranteed 'freedom to be intellectually * * * diverse or even con-

trary' and the 'right to differ as to things that touch the heart of the existing order,' encompass the freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous." 394 U.S. at 593, 89 S.Ct. at 1366.

13. In *Halter,* the Court affirmed a conviction for advertising beer by printing and painting a representation of the flag on beer bottles. The statute, which prohibited the commercial use of the flag, was held not to infringe any of appellants' constitutional rights, although it does not appear that they claimed the statute infringed their first amendment rights of free expression.

14. New York's statute is even broader than Connecticut's, principally in its definition of the term "flag." However, because the Court of Appeals in *Vietnam Moratorium* held the New York statute overly broad insofar as it prohibited conduct involving the flag itself, we perceive no basis for treating this distinction between the statutes as affecting constitutionality under the first amendment.

that conduct which will have those effects. Therefore, on its face, the Connecticut statute is susceptible to a reading which would authorize local law enforcement officers to prosecute first amendment activity in the prohibition of which no valid state interest exists. The consequence is overbreadth, "the statutory result when the legislature, having the power to regulate certain conduct, strikes so bluntly as to proscribe constitutionally protected conduct as well." *Hodsdon v. Buckson,* 310 F.Supp. 528, 532 (D.Del.1970). *See generally* Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970).

Apart from its broad prohibition of flag usage, the Connecticut statute makes it a crime to publicly mutilate, trample upon or otherwise deface or defile or put indignity upon the flag or upon a flag, standard, color or ensign evidently purporting to be the flag. While we see no reason to apply a different analysis to this part of the statute, it is convenient to treat it separately because of the present state of precedent, created in part by the fact that flag misuse and flag mutilation are subjects of separate sections of the New York flag desecration statute.

*Vietnam Moratorium* involved only the flag misuse section of New York's statute, which as earlier noted is substantially the same as those parts of the Connecticut statute prohibiting flag misuse. Street v. New York, *supra,* 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572, dealt with a conviction under the separate section of the New York statute prohibiting flag mutilation and defilement, and reversed that conviction on the premise that it was based on pure speech which New York had no valid interest in restricting.[15] Finally, there is People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N. E.2d 30 (Ct.App.1970), which upheld a conviction under the New York mutila-

tion and defilement section for non-speech conduct toward the flag. The United States Supreme Court affirmed the conviction by an equally divided court. 401 U.S. 531, 91 S.Ct. 1217, 28 L. Ed.2d 287 (1971).

We reject the contention that these cases, particularly *Radich,* compel us to uphold on its face Connecticut's prohibition of flag mutilation irrespective of the provisions on flag misuse. First, Connecticut's statute could reasonably be read on its face to prohibit verbal defilement of the flag. That in itself would render the statute fatally overbroad in light of the holding in *Street.* Second, the affirmance of *Radich* without opinion can be read to mean no more than that a state may properly prohibit public flag defilement (of the non-speech variety) *which threatens a breach of the public peace.* This follows from the fact that Radich attacked the constitutionality of the statute only as applied to the conduct for which he was convicted, and from the New York Court of Appeals' express affirmance of "the lower court's conclusion that the legitimate public interest which the statute is designed to protect [i. e. "preservation of the public peace," 308 N.Y.S.2d at 853, 257 N. E.2d at 36] was threatened by the violation of which defendant was convicted." 308 N.Y.S.2d at 854, 257 N.E.2d at 36. Thus, Radich's conviction was presented to the Supreme Court essentially in the form of a pure breach of peace conviction.

■ Third, *Vietnam Moratorium* and *Street* together delimit the state interests which might conceivably serve to justify the statute's impingement on first amendment activity. No reason appears why the interests involved when a flag is mutilated are different from those at stake when it is misused, and *Vietnam Moratorium* plainly leaves no room to weigh in the balance other state interests

15. Four Justices dissented in *Street* on the ground that the Court should have reached the question whether the defendant's non-speech conduct (burning the flag) could constitutionally be proscribed, and should

have held that it could be. *See also* Hoffman v. United States, 445 F.2d 226 (D.C. Cir. 1971); United States v. Ferguson, 302 F.Supp. 1111 (N.D.Cal.1969).

(e. g. an interest in the flag as government property, *see* dissenting opinion of Mr. Justice Fortas in *Street*, 394 U.S. at 616–617, 89 S.Ct. 1354, 22 L.Ed.2d 572; *compare* Crosson v. Silver, *supra*, 319 F. Supp. at 1087–1088). Under *Vietnam Moratorium* only the state's interest in preventing conduct which incites others to commit unlawful acts or provokes retaliation in the form of a breach of peace can justify prohibition of symbolic speech involving the flag.

Fourth, the Connecticut mutilation prohibition, like the misuse provisions, is not narrowly drawn to outlaw only those acts which incite onlookers to commit unlawful acts or provoke others to retaliate in breach of the peace. Fifth, while flag mutilation may be more likely to provoke those reactions than some other forms of flag misuse, it surely is not always so inherently provocative. Sixth, although we adhere to the Supreme Court's admonition in United States v. O'Brien, *supra*, 391 U.S. at 376, 88 S.Ct. at 1678, 20 L.Ed.2d 672 that "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," we also think it clear that certain acts of flag mutilation, prohibited by Connecticut's statute, must be regarded as symbolic speech. *See, e. g.,* Cowgill v. California, 396 U. S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970) (Mr. Justice Harlan concurring in the dismissal of the appeal); United States v. Ferguson, *supra*, 302 F.Supp. at 1113; *compare* dissenting opinion of Mr. Justice Black in *Street*, *supra*. 394 U.S. at 609–610, 89 S.Ct. 1354, 22 L.Ed.2d 572.

■ It is evident, therefore, that the Connecticut statute on its face prohibits not only flag defilement which incites violence, which the affirmance of *Radich* suggests may properly be prohibited, but also conduct which under *Vietnam Moratorium* cannot constitutionally be made a crime. Because it "authorizes the punishment of constitutionally protected conduct," Coates v. City of Cincinnati, *su-*

*pra*, 402 U.S. at 614, 91 S.Ct. at 1688, 29 L.Ed.2d at 217, it is void for overbreadth.

We share the concern of the Supreme Court that "disrespect for our flag is to be deplored no less in these vexed times than in calmer periods of our history." Street v. New York, *supra*, 394 U.S. at 594, 89 S.Ct. at 1367. And surely the case is made more difficult "because the flag involved is our own." West Virginia State Bd. of Educ. v. Barnette, *supra*, 319 U.S. at 641, 63 S.Ct. at 1187, 87 L. Ed. 1628.

> "Nevertheless, we apply the limitations of the Constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization." *Id.*

We have no reason to believe defendants will continue to enforce § 53–255 upon notice of this decision; accordingly, we forbear to enter an injunction restraining them from enforcing it. Declaratory judgment may, however, enter that Section 53–255 of the Connecticut General Statutes is unconstitutional and is hereby declared void because it makes criminal that which under the Constitution may not be made a crime.

So ordered.

J. JOSEPH SMITH, Circuit Judge (concurring in the result):

I concur in the result. Were we writing on a tabula rasa, I would hold the statute separable and uphold it so far as it attempts to prevent physical abuse of the flag, and not pure speech. But we sit here as a district court within the second circuit, bound to follow decisions of our Court of Appeals so long as they stand. Specifically, the determination of our Court of Appeals in Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2d Cir. 1970), appeal pending, seems to me to require invalidation of the Connecticut statute, which is not distinguishable in any respect here relevant from the New York statute struck down in the *Long Island Vietnam* case. I agree with that opinion so

far as it protects speech, but I question the soundness of so much of that holding, which expands the protection given pure speech or propaganda regarding the flag by Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) to non-speech activity in a manner which is inconsistent with the holding of Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907). I would hold that destruction or defilement of the flag itself, national or state, may constitutionally be prohibited, both under the police power of the state to prevent breaches of the public peace, and under the power of the state to protect its interest in the integrity of the adopted symbol of nationhood or statehood. See the dissents of Chief Justice Warren and Justices Black, White and Fortas in *Street,* and see People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (Ct.App.1970) aff'd per curiam by an equally divided court, 401 U.S. 531, 91 S.Ct. 1217, 28 L.Ed.2d 287 (1971); Sutherland v. DeWulf, 323 F.Supp. 740 (S.D.Ill.N.D.1971); State of Iowa v. Waterman, 190 N.W.2d 809 (Sup.Ct. Iowa, October 13, 1971).

The state courts should have an opportunity to sever and salvage the portion of the statute directed to destruction or defilement of the flag, or we should hold invalid only the "speech" aspects. Cf. Griffin v. Breckenridge, 403 U.S. 88, 104, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Oregon v. Mitchell, 400 U.S. 112, 131, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970); Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); Marsh v. Buck, 313 U.S. 406, 61 S.Ct. 969, 85 L. Ed. 1426 (1941).

I concur in the result therefore only because we are bound by the decision of the Court of Appeals in *Long Island Vietnam* to strike down the statute as written.

CLARIE, District Judge (dissenting):

I respectfully dissent from the majority opinion. I find the Connecticut statute, § 53–255, to be constitutional as did the three-judge State Circuit Court of Appeals in its unanimous decision in State v. Van Camp, 6 Conn.Cir. 609, 281 A.2d 584 (1971) on which appellate certification was denied by the Connecticut Supreme Court. This position is sustained by Sutherland v. DeWulf, 323 F. Supp. 740 (S.D.Ill.N.D.1971) (the burning of the flag); Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970) (the wearing of a vest fashioned from a cut up flag); Hoffman v. United States, 256 A.2d 567 (D.C.App. 1969) (wearing a shirt resembling the flag); and State of Iowa v. Waterman, Sup.Ct. of Iowa, filed Oct. 13, 1971, 190 N.W.2d 809 (wearing a slit flag as a "poncho"); *see also,* People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N. E.2d 30 (1970) aff'd per curiam by an equally divided court, 401 U.S. 531, 91 S.Ct. 1217, 28 L.Ed.2d 287 (1971).[1]

The Connecticut legislature by its passage of this law sought to protect and safeguard two "substantial governmental interest(s)," the prevention of breaches of the public peace and the maintenance of the integrity of this nation's symbol of sovereignty, its people and the heritage of ideals which they cherish. These interests are unrelated to the suppression of free expression and the incidental restriction on alleged first amendment freedoms is no greater than is essential to the furtherance of these legitimate governmental interests. *See,* United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The Connecticut law does not compel or restrain conduct contrary to personal beliefs, nor does it otherwise interfere with the right to a free and uninhibited

---

1. See also the following cases concerning flag desecration statutes: Parker v. Morgan, 322 F.Supp. 585 (W.D.N.C. 1970); Crosson v. Silver, 319 F.Supp. 1084 (D.Arizona 1970); Hodsdon v. Buckson, 310 F.Supp. 528 (D.Del.1970); United States v. Ferguson, 302 F.Supp. 1111 (N.D.Calif.1969).

verbal expression of ideas. It has long been determined in West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), that any attempt at statutory coercion to compel the declaration or acceptance of a belief or idea is contrary to the constitutional guarantees established and protected under the first amendment. This statute does no violence to that basic precept. A proper application of § 53–255 is limited to physical acts against the flag so as to defile, cast contempt, or make a mockery of it. It in no way limits the use of defiant or contemptuous spoken words directed toward the flag, nor does it deny or restrain the right to a free and open public criticism of the principles for which the flag stands.

The Supreme Court in Street v. New York, 394 U.S. 576, 594, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), declined to reach the question of whether or not a state could punish an individual, for publicly and deliberately desecrating the flag, as a means of dramatizing one's dissatisfaction and as a protest against social conditions within our Country. However, the four Justices who dissented did comment on that issue and indicated that such acts could constitutionally be punished. Chief Justice Warren, writing for the majority in United States v. O'Brien,

*supra* at 376, 88 S.Ct. at 1678, said with great persuasion:

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

If the law were otherwise, it would be an open invitation to those disrupters, who in the name of advocacy, would throw brickbats onto the judicial bench through the courthouse window and thereafter argue that such conduct should be tolerated, because it was intended only as symbolic speech, designed to colorfully and forcefully depict their contemptuous regard toward a specific judicial decision or the entire judicial process.[2]

The majority suggests that this case must be controlled by the decision of this Circuit in Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2d Cir. 1970). It was held there, that the statute under which the contemplated prosecution would have been initiated was overbroad and hence violative of the first amendment, because it proscribed symbolic expression "in the absence of any valid state interest." (*supra* at 349). However, the New York case can be distinguished from the present one. The New York statute carried a much broader definition of what constituted a "flag;[3]" whereas the Con-

---

2. The argument might be made that communication of a particular political viewpoint is most dramatically effected by flag mutilation. But this is not sufficient to counter valid state interests. *See* United States v. Miller, 367 F.2d 72, 81–82 (2d Cir. 1966). *Cf.* Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). The Connecticut statute certainly does not have "the effect of entirely preventing a 'speaker' from reaching a significant audience with whom he could not otherwise lawfully communicate." 391 U.S. at 388–389, 88 S.Ct. at 1685, 20 L.Ed.2d 672 (Harlan, J., concurring). The plaintiffs here can convey their messages in many ways other than wearing the flag as a vest.

3. The New York statute defines "flag" to include:

"(A)ny flag, standard, color, shield or ensign, or any picture or representation, of either thereof, made of any substance, or represented on any substance, and of any size, evidently purporting to be, either of, said flag, standard, color, shield or ensign, of the United States of America, or of the state of New York, or a picture or a representation of either thereof, upon which shall be shown the colors, the stars, and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation may believe the same to represent the flag, colors, standard, shield or ensign of the United States of America or of the state of New York." § 136(a) of the General Business Law of New York, McKinney's Consol.Laws, c. 20.

necticut statute is narrowly drawn to comport with valid state interests. It defines "flag" to include:

"(A)ny flag, standard, color or ensign of the United States or the state flag of this state or any ensign evidently purporting to be either of such flags, standards, colors or ensigns * * *."

The overall definition, while somewhat redundant, clearly indicates that § 53–255 is aimed only at actual American and state flags and those *flags* or *ensigns* which obviously purport to be such. To read this statute, as authorizing the proscription of the type of symbol which concerned the court in *Long Island Vietnam*, would "do violence to its plain language." (*supra* at 348).

The statutory definition of "flag," in § 53–255, is consistent with the underlying purpose of the law. The average citizen, who would be provoked to violent reaction with its resulting breach of the peace, because of the misuse of the American flag, would in all probability react in an identical manner to the misuse of a banner or flag, which although purporting to be a "real" American flag might fail in some technicality to conform. Since the state may constitutionally require its citizens to respect the physical integrity of the American flag, it may also reasonably regulate its use, so as to insure that its integrity will not be effectively emasculated through the utilization of facsimiles.

The Second Circuit has said, "many types of flag usage and flag alteration * * * are a * * * means of nonverbal political communication," (437 F. 2d at 349) and as such are forms of "symbolic speech." But "(T)he First Amendment does not license individuals to speak 'whenever and however and wherever, they please.' Adderley v. Florida, 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149." Sutherland v. DeWulf, 323 F.Supp. 740, 743 (S.D.Ill.N.D.1971). In United States v. O'Brien, *supra*, 391 U.S. at 376, 88 S.Ct. at 1678, the Supreme Court held:

"(W)hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."

At page 377, 88 S.Ct. at page 1679, it spoke further:

"(A) government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interests; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

The state interests sought to be advanced by the Connecticut flag misuse statute satisfy this test.

The statute first seeks to prevent outbreaks of violence and breaches of the peace provoked by the physical disparagement of the flag. As the Supreme Court said in Halter v. Nebraska,

"(I)t has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot." 205 U.S. 34, 41, 27 S.Ct. 419, 421, 51 L.Ed. 696 (1907).

In a similar vein, a three judge constitutional court recently observed:

"One has only to read the newspaper in the recent past to know that the public mutilation of the flag is an act which is likely to elicit a violent response from many who observe such acts." Sutherland v. DeWulf, 323 F. Supp. at 745.

It can hardly be doubted that such an interest is substantial and within the constitutional power of the Government. *Cf.* Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

Clearly the second phase of the Connecticut statute, which proscribes the

mutilation, defacement, and defilement of the flag, is intended to avoid just such breaches of the peace by foreclosing flagrantly provocative conduct. So also that phase of the statute which forbids the placing or appending of any word, picture, or design upon the flag should be construed to proscribe provocative conduct likely to cause a breach of the peace. A limitless number of other mediums of public expression exist to disseminate ideas on public issues. Whether it is by signs, placards, images, effigies, designs, words, or otherwise, all are essentially free and available to one who would have his ideas heard, seen and disseminated.

Inextricably related to the breach of the peace basis for the Connecticut flag misuse statute is the great respect that Americans, with almost complete unanimity, respect and honor the national emblem. Flag misuse is very likely to provoke violence precisely because many citizens regard such conduct as "fighting words." Chaplinsky v. New Hampshire, 315 U.S. at 572, 62 S.Ct. 766, 86 L.Ed. 1031. This respect itself indicates the importance of the state interest in preserving the physical integrity of the national flag.

As Justice Fortas so aptly stated in his dissent in Street v. New York, *supra,* 394 U.S. at 616, 89 S.Ct. at 1378:

"(T)he flag is a special kind of personalty. Its use is traditionally and universally subject to special rules and regulations. As early as 1907, this Court affirmed the constitutionality of a state statute making it a crime to use a representation of the United States flag for purposes of advertising. Halter v. Nebraska, 205 U.S. 34 [27 S.Ct. 419, 51 L.Ed. 696] (1907). Statutes proscribe how the flag may be displayed; how it may lawfully be disposed of; when, how, and for what purposes it may and may not be used. See, *e. g.,* 4 U.S.C. § 3; 56 Stat. 377, c. 435, 36 U.S.C. §§ 172–177. A person may 'own' a flag, but ownership is subject to special burdens and responsibilities. A flag may be property, in a sense; but it is property burdened with peculiar obligations and restrictions. Certainly, as Halter v. Nebraska, *supra,* held, these special conditions are not *per se* arbitrary or beyond governmental power under our Constitution."

Legal principles, which for almost two hundred years have aided in sustaining universal civilian respect for our nation's flag, should not now be eroded under the mistaken guise of protected symbolic speech.

### COMITY

Because the Court's assumption of jurisdiction here is incompatible with the decisions of the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971) and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), I also dissent on the issue of jurisdiction.

During this litigation,[4] there was an appeal pending by a different litigant in the Connecticut Supreme Court by reason of a conviction under the same Connecticut flag desecration statute. The latter appeal raised the same first amendment arguments as were presented by plaintiffs here. While this parallel state litigation did not involve the same parties, it is submitted that the rationale of *Younger* is nonetheless dispositive. A declaratory judgment by this Court to the effect that the Connecticut statute unconstitutionally infringes upon first amendment freedoms, effectively "stops" the orderly adjudication of these very

4. Prior to this Court's handing down of opinions in this case but well after the evidentiary hearing of April 19, 1971, the Connecticut Supreme Court decided to deny a petition for certification from an intermediate appellate court which held the Connecticut flag statute constitutional. State v. Van Camp, cert. to Conn.Sup.Ct. denied, Aug. 13, 1971, 280 A.2d 536.

**1216**

same claims in the pending state appellate proceeding.[5]

The "vital consideration" of comity, *Younger*, 401 U.S. at 44, 91 S.Ct. 764, 27 L.Ed.2d 688, is emasculated in this decision where a federal court, with no showing of the kind of "great and immediate" irreparable injury enunciated by the Supreme Court in *Younger* decides the very issue being litigated, at the time of the argument of this suit, in the State Supreme Court. Absent a showing of irreparable injury, it is submitted that a balance between the comity considerations articulated by the Supreme Court in *Younger* and the notion that this particular plaintiff should be entitled to be heard in a judicial forum without subjecting himself to criminal liability in order to do so, must be struck here in favor of allowing the state appellate court to adjudicate the pending constitutional issues free from federal court interference. The statute has a valid public purpose. I would find the law constitutional as written.

---

5. Samuels v. Mackell determined that the "practical effect" of a declaratory judgment is ordinarily "virtually identical" to that of an injunction. (401 U.S. at 73, 91 S.Ct. 764, 27 L.Ed.2d 688).